## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLOIRDA
## ORLANDO DIVISION

In re:

DE'ANTHONY SHAMAR,                          Case No. 6:11-bk-08748-ABB
                                            Chapter 7
      Debtor.

_____/

ROBERT W. RASCH, P.A.,

      Plaintiff,

v.                                          Adv. Pro. No. 6:11-ap-00231-ABB

DE'ANTHONY SHAMAR,

      Defendant.

_____/


## MEMORANDUM OPINION

This matter came before the Court on the Complaint (Doc. No. 1) filed by the Plaintiff Robert W. Rasch, P.A. ("Plaintiff") against the Debtor/Defendant De'Anthony Shamar ("Debtor"). Plaintiff seeks to have a debt of $73,347.22 deemed nondischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A).[1] The final evidentiary hearing was held on February 15, 2012 at which the Debtor and Robert W. Rasch ("Mr. Rasch"), as the principal of and counsel for Plaintiff, appeared. Plaintiff, pursuant to the Court's directive, filed and served on the Debtor detailed billing statements post-hearing (Doc. Nos. 21, 24).

---

[1] Plaintiff titled the Complaint "Rasch's Complaint to Deny Discharge" and cited to 11 U.S.C. Sections 727(c)(1) and 523(a)(2) in the Complaint. Plaintiff did not plead or establish a Section 727 cause of action. This matter constitutes a Section 523(a)(2)(A) cause of action.

Judgment is due to be entered in favor of the Debtor and against Plaintiff pursuant to 11 U.S.C. Section 523(a)(2)(A) for the reasons set forth herein. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Attorney-Client Relationship*

The Debtor filed the above-captioned Chapter 7 bankruptcy case on June 10, 2011 ("Petition Date"). The Debtor was a police officer with the City of Sanford Police Department for several years and was terminated. He has been unemployed since March 2011.[2] His Schedules reflect he owns no real property and has personal property totaling $6,500.00, including a claim for back wages of $4,500.00.[3] Schedules I and J set forth he has negative monthly income of $162.35 based upon "assistance" income of $2,500.00 per month and monthly expenses of $2,662.35.

Plaintiff is a law firm located in Altamonte Springs, Florida solely owned by Mr. Rasch. Mr. Rasch is a member of the Florida Bar and has been practicing law for more than thirty years. Plaintiff instituted this adversary proceeding against the Debtor alleging the Debtor incurred a debt of $73,347.22 for legal services through misrepresentations and/or actual fraud. The Debtor does not dispute he owes the debt to Plaintiff.

The debt emanates from Plaintiff's representation of the Debtor in separate employment discrimination and retaliation proceedings against the City of Sanford

---

[2] Main Case Doc. No. 1, Schedule I.
[3] *Id.*, Schedules A, B.

2

("City") in the United States District Court for the Middle District of Florida, Orlando Division ("District Court"), the Equal Employment Opportunity Commission ("EEOC"), and the Florida Commission of Human Relations ("FCHR"). The Debtor, through previous counsel, had filed an employment discrimination action against the City in the District Court in May 2006. Plaintiff assumed representation of the Debtor in that litigation in December 2006.

Plaintiff instituted grievance actions on behalf of the Debtor against the City with the FCHR and EECO in September 2007. The grievance actions were pending contemporaneously with the District Court case.

Plaintiff and the Debtor executed a retainer agreement ("Retainer Agreement") delineating the terms of their attorney-client relationship on January 6, 2007.[4] The scope of Plaintiff's representation included the Debtor's employment discrimination and retaliation claims against the City and any other matters to be determined by the Debtor.[5] The Retainer Agreement provides the Debtor was to pay a retainer of $5,000.00 to Plaintiff and Mr. Rasch's services would be billed through a combination of hourly fees and a contingency fee. Plaintiff, for the hourly fee component, billed at an hourly rate of $100.00, which was a reduced hourly rate. Mr. Rasch's normal hourly rate was $300.00. The remainder of Mr. Rasch's services would be paid on a contingency basis, whereby Plaintiff was entitled to thirty percent of any judgment awarded to the Debtor.[6]

The Debtor paid Plaintiff the $5,000.00 retainer in full and periodically paid fees billed at the hourly rate as his finances allowed. The Debtor's financial resources were limited. He had de minimis assets and his average annual income was approximately

---

[4] Doc. No. 22, Plaintiff's Exhibit 1.
[5] Id.
[6] Id.

$44,000.00.[7]  His periodic payments kept the balance due to Plaintiff below $10,000.00 until June 2008 when the outstanding fee balance grew to $16,020.83.[8]  The Debtor, due to his lack of financial resources, made no payments to Plaintiff between June 2008 and October 2008.[9]

Plaintiff threatened on several occasions to withdraw as counsel due to the Debtor's failure to pay, but took no formal steps to withdraw.  The Debtor made a good faith payment of $2,000.00 to Plaintiff on October 31, 2008, leaving a balance due of $31,214.19.[10]  The Debtor made no subsequent payments to Plaintiff, but Mr. Rasch continued to perform legal services for the Debtor through March 2010.  Plaintiff's unpaid fees in March 2010 totaled $65,556.05.

### Litigation Results

The Debtor's grievance petition filed with the FCHR in September 2007 was rejected by the FCHR Administrative Law Judge.  Plaintiff filed an amended grievance petition on September 11, 2008 with the FCHR.  The FCHR dismissed the amended petition and ordered the case closed on October 1, 2009.  Plaintiff, upon the Debtor's request, pursued the matter with counsel for the FCHR and petitioned the FCHR to reopen the case.  The FCHR reopened the case in December 2009.[11]

---

[7] Doc. No. 1, Statement of Financial Affairs.
[8] Doc. No. 21, Attachment 1, p. 8.
[9] Id. at p.6, ¶ 9(g).
[10] Doc. No. 21 Attachment 1, p.8.

[11] Plaintiff states in his post-hearing Affidavit (Doc. No. 21) he instituted a race discrimination claim on behalf of the Debtor with the EEOC, but Plaintiff failed to delineate the outcome of that litigation.

The jury in the District Court litigation, while the reopened FCHR matter was pending, returned a verdict in favor of the City on December 17, 2008.[12]  The District Court entered a Judgment against the Debtor and in favor of the City and awarded the City costs of $16,716.96.[13]  The Debtor moved for a new trial and filed a notice of appeal.[14]  The City sought sanctions against the Debtor for alleged failures to cooperate in post-judgment discovery.

The Debtor and the City entered into a settlement agreement in early 2010 whereby the City agreed to not pursue its cost judgment against the Debtor and the Debtor agreed to withdraw his pending FCHR petition.  The settlement agreement resolved the post-trial sanctions litigation pending between the City and the Debtor in the District Court.  The Debtor and the City consummated their settlement agreement.  The Debtor was represented by Plaintiff throughout the settlement negotiation and consummation.  Plaintiff's representation of the Debtor was instrumental in releasing the Debtor from the City's cost judgment of $16,716.96.

### Debtor's Representations to Plaintiff

The Debtor, in August 2008 while Plaintiff was representing him, told Mr. Rasch he was expecting to receive an inheritance from his recently deceased father and would use the funds to pay Plaintiff's outstanding fee balance.[15]  The Debtor provided no details regarding the expected inheritance including the decedent's name, whether a probate

---

[12] *De'Anthony Shamar v. City of Sanford, Florida*, Case No. 6:06-cv-735-Orl-28GJK, Doc. No. 140.  The Court takes judicial notice of the docket and docket contents of the District Court case.
[13] *Id.*, Doc. Nos. 145, 147.
[14] The Debtor's appeal was dismissed by the United States Court of Appeals for the Eleventh Circuit on March 4, 2009 for lack of prosecution. *Id.*, Doc. No. 158.
[15] *Id.* at p.6, ¶ 9(d).

proceeding was pending, or its status. Plaintiff believed the Debtor's statements and made no inquiries about the circumstances or likelihood of the alleged inheritance.

The Debtor, some weeks later, told Plaintiff he was working with a probate attorney in Atlanta, Georgia and would pay Plaintiff as soon as he received his inheritance.[16] Plaintiff does not recall the name of the probate attorney or whether he contacted this attorney to verify the source or status of the Debtor's pending inheritance.[17] Plaintiff continued to perform legal services for the Debtor believing his fees would be paid from the inheritance.

The Debtor, in early 2009, informed Plaintiff there were complications with his inheritance. Plaintiff made no inquiries or investigation regarding the inheritance. The Debtor, in April or May of 2009, told Plaintiff there was a paternity challenge by other children of the decedent.[18] The Debtor had grown up believing he was the decedent's only child and at some point in 2009 he learned from a relative the decedent was not his biological father. The Debtor was devastated by the disclosure. Neither the Debtor nor Plaintiff named the decedent at trial or in their pleadings or provided any specific details regarding the probate proceeding and its ultimate outcome. The Debtor received no inheritance from the decedent's estate.

Mr. Rasch made no attempt to investigate the Debtor's alleged inheritance at any point, even after the Debtor informed Plaintiff there was a paternity challenge. Plaintiff, in the fall of 2009, engaged a collection agent, Eva Mae Newton ("Ms. Newton"), to attempt to collect on the Debtor's outstanding fees. Ms. Newton contacted the Debtor by

---

[16] *Id.*
[17] *Id.* at p.7, ¶ 9(i).
[18] Doc. No. 21 Attachment 1, p.6, ¶ 9(g).

telephone at his place of employment, the City of Sanford Police Department, in October 2009.

Ms. Newton testified the Debtor stated to her he would not be receiving any inheritance because there was never going to be an inheritance. Ms. Newton had the impression from the Debtor's statements and intonation that the inheritance story had been fabricated by him. Ms. Newton relayed this information to Plaintiff.[19]

Ms. Newton's testimony and demeanor reflected she has animosity towards the Debtor. Her animosity diminished her credibility. Her testimony does not establish the Debtor engaged in any fraudulent conduct in his relationship with Plaintiff.[20]

Plaintiff, after receiving this information from Ms. Newton, continued to represent the Debtor. He continued to pursue the Debtor's FCHR claim by seeking to have the FCHR case reopened. He made no effort to withdraw from any of the Debtor's matters.

Plaintiff, in December 2010, commenced a civil collection action against the Debtor in the Florida State Courts seeking a judgment for his outstanding fees. The State Court entered a Judgment by default against the Debtor for $73,347.22 on March 24, 2011.[21]    The Judgment amount includes the unpaid fee balance of $65,556.05, prejudgment interest of $7,211.17 and costs of $580.00.

---

[19] *Id.* at p. 6, ¶ 9.

[20] Ms. Newton's communication with the Debtor may be inconsistent with the Fair Debt Collection Practices Act. 15 U.S.C. § 1692. The FDCPA prohibits "communication with the consumer, without permission from the consumer or a court, at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication." *Id.*

[21] Doc. No. 22.

Plaintiff alleges the amount of $73,347.22 is due and owing by the Debtor based upon the State Court Judgment. He asserts the entire amount is nondischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code. Plaintiff is the Debtor's largest creditor. The Debtor's filing for bankruptcy protection was caused by the entry of the State Court Judgment.

The State Court Judgment does not contain any findings of fact or conclusions of law establishing the Debtor made any misrepresentations or engaged in fraudulent conduct in his relationship with Plaintiff.[22] The State Court Judgment has no res judicata effect regarding a Section 523(a)(2)(A) nondischargeability proceeding.

### Analysis

The totality of the circumstances establishes the Debtor did not make any misrepresentations or engage in fraudulent conduct in his dealings with Plaintiff. The Debtor represented to Mr. Rasch he believed he would be receiving an inheritance from his deceased father from which he would pay Plaintiff's fees. The Debtor's testimony, he believed he was to receive an inheritance and intended to pay Plaintiff's fees from such inheritance, was credible. The Debtor, during each discussion he had with Mr. Rasch regarding the inheritance, believed he was entitled to an inheritance and intended to pay Plaintiff from the inheritance. He made no false representations to Plaintiff.

The presence of good faith is further established by the Debtor's payment history. He paid the retainer in full and, for more than a year, made payments to Plaintiff on the hourly bills despite his economic distress.

Plaintiff relied on the Debtor's representations regarding the expected inheritance and continued to represent him. Plaintiff did not establish his reliance on the Debtor's

---

[22] Doc. No. 21, Attachment B, p.1-2.

representations was justified. Mr. Rasch, having practiced law for more than thirty years and as the owner of a law firm, is experienced with legal and business matters. He should have conducted an investigation into the Debtor's inheritance and the status of the probate proceedings. His reliance upon the Debtor's statements regarding the inheritance was not justified.

Plaintiff did not establish any of the elements of Section 523(a)(2)(A) by a preponderance of the evidence. It did not establish the Debtor made any false representations to deceive Plaintiff. The Debtor made no false representations. He believed he was going to receive an inheritance from a decedent whom he believed was his father. He informed Plaintiff of his inheritance expectation and the subsequent probate problems. Plaintiff made no investigation into the source or status of the inheritance. Plaintiff's reliance on the Debtor's statements was not justified.

Plaintiff did not establish it sustained a loss as result of any misrepresentation by the Debtor. The indebtedness owed by the Debtor to Plaintiff is dischargeable and due to be discharged. Judgment is due to be entered in favor of the Debtor and against Plaintiff pursuant to Section 523(a)(2)(A).

## CONCLUSIONS OF LAW

### *11 U.S.C. § 727*

Plaintiff cites to 11 U.S.C. Section 727(c)(1) in his Complaint, but it neither plead nor presented the elements of a Section 727 objection to discharge cause of action. Any relief sought by Plaintiff pursuant to Section 727 is due to be denied. This adversary proceeding constitutes a Section 523(a)(2)(A) nondischargeability cause of action.

### *11 U.S.C. § 523(a)(2)(A)*

The party objecting to the dischargeability of a debt pursuant to 11 U.S.C. Section 523(a) carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291 (1991); FED. R. BANKR. P. 4005. Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. Schweig v. Hunter (In re Hunter), 780 F.2d 1577, 1579 (11th Cir. 1986).

Section 523(a)(2)(A) provides a discharge pursuant to Section 727 does not discharge an individual from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—"

> false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A). Plaintiff must establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action:   (1) Debtor made a false representation with the purpose and intent to deceive Plaintiff; (2) Plaintiff relied on the misrepresentation; (3) the reliance was justified; and (4) Plaintiff sustained a loss as a result of the misrepresentation. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998); Fuller v. Johannessen (In re Johannessen), 76 F.3d 347, 350 (11th Cir. 1996).   Plaintiff must establish each of the four common law fraud elements by a preponderance of the evidence. Grogan, 498 U.S. at 291; In re Wiggins, 250 B.R. 131, 134 (Bankr. M.D. Fla. 2000).

The cornerstone element in a Section 523(a)(2)(A) nondischargeability proceeding is a misrepresentation made with the intent to deceive the creditor. A creditor cannot establish non-dischargeability pursuant to Section 523(a)(2)(A) without proof of

reliance on intentional misstatements by the debtor. <u>City Bank & Trust Co. v. Vann</u> (<u>In re Vann</u>), 67 F.3d 277, 280 (11th Cir. 1995). A determination of fraudulent intent is an issue of fact and "depends largely upon an assessment of the credibility and demeanor of the debtor . . . ." <u>Equitable Bank v. Miller</u> (<u>In re Miller</u>), 39 F.3d 301, 305 (11th Cir. 1994). Intent is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. <u>Id.</u>

The creditor's reliance upon the debtor's false representation must be justified. <u>Field v. Mans</u>, 516 U.S. 59, 73-75 (1995); <u>In re Vann</u>, 67 F.3d at 283-84. Whether such reliance is justified is determined by a subjective test. <u>Id.</u> at 281. "Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." <u>Id.</u> (*quoting* W. PAGE KEETON, PROSSER & KEETON ON TORTS § 108, at 751 (5th ed. 1984)). The exercise of common sense is relevant:

> [i]t is only where, under the circumstances, the facts should be apparent to one of [plaintiff's] knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

<u>Id.</u> at 283.

A plaintiff, as the fourth nondischargeability element, must establish a causal link between the debtor's misrepresentation and the resulting loss sustained by the plaintiff. <u>Lightner v. Lohn</u>, 274 B.R. 545, 550 (M.D. Fla. 2002). "Proof of fraud in cases involving unfulfilled promises requires a plaintiff to prove that when a defendant made promises he knew he could not fulfill them or had no intention of fulfilling them." <u>In re Pupello</u>, 281 B.R. 763, 766 (Bankr. M.D. Fla. 2002).

*Analysis*

The Debtor was contractually obligated to pay Plaintiff for Mr. Rasch's legal services on an hourly basis pursuant to the parties' Retainer Agreement. The Debtor paid the $5,000.00 retainer in full and made period payments on Plaintiff's hourly billing statements. The Debtor had limited financial resources due to his employment situation and paid what he could when funds were available. Plaintiff's hourly fee balance continued to grow.

The Debtor, two years into the parties' relationship, informed Mr. Rasch he believed he was going to receive an inheritance from his deceased father's estate and intended to pay Plaintiff with those funds. As issues arose regarding the Debtor's anticipated inheritance, he informed Mr. Rasch. Mr. Rasch did not conduct any due diligence as to the source of the expected inheritance, the probate proceedings, or the likelihood of the Debtor receiving an inheritance. The Debtor owed the plaintiff over $16,000.00, at the time the inheritance representations were made. Mr. Rasch made no attempt to withdraw as Debtor's counsel and continued to represent him even after the District Court jury trial had concluded.[23]

---

[23] Mr. Rasch, as a member of the Florida Bar, is governed by the Florida Bar Rules of Professional Conduct. He made a substantial financial investment in the Debtor by continuing to represent the Debtor despite the Debtor's inability to pay. He had opportunities to withdraw as counsel due to lack of payment, but he continued to represent the Debtor, even when the Debtor failed to respond to his communications.

Rule 4.1-16 provides a lawyer may withdraw from representation if:

> The client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled; [or] the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client.

*Fla. Bar Rule 4-1.16(c)(3)-(4)*. The comments to this Rule state "a lawyer may withdraw if the client refuses to abide by the terms of an agreement relating to the representation, such as an agreement concerning fees or court costs" *Id.*

12

Mr. Rasch was professional, ethical, and diligent in his representation of the Debtor, even when it became obvious payment of his fees was an issue. He obtained excellent results for the Debtor. His persistence with the FCHR petition led to the settlement agreement between the City and Debtor pursuant to which the City withdrew its motion for sanctions pending against the Debtor in the District Court and released its costs judgment.

The Debtor believed the statements he made to Mr. Rasch were true when he made them. He believed the decedent was his biological father and he was entitled to receive an inheritance from the decedent's estate. The Debtor intended to use his inheritance to pay Plaintiff's bill. A paternity challenge arose, which blindsided the Debtor, and he did not receive an inheritance. The Debtor informed Plaintiff of these unanticipated developments. The Debtor made no misrepresentations to Plaintiff. He did not fraudulently induce Plaintiff to continue to represent him.

Plaintiff did not establish the elements of Section 523(a)(2)(A) by a preponderance of the evidence. The Debtor made no false representations to Plaintiff. He did not engage in any fraudulent conduct in his relationship with Plaintiff. Plaintiff failed to establish the first and second nondischargeability elements.

Mr. Rasch had the capacity and ability to thoroughly investigate the Debtor's statements regarding the expected inheritance, the probate proceeding, and the paternity

---

Plaintiff asserts the District Court would not have allowed him to withdraw. It is likely a motion to withdraw filed close to the time of the jury trial would have been denied. Garden v. Garden, 834 So. 2d 190, 193 (Fla. 2002) (explaining "withdrawal at the moment a trial is to commence can seldom be accomplished without material adverse effect on the client" and tardily filed motions to withdraw should not be granted). Plaintiff made the decision to not pursue a motion to withdraw in any of the litigation at any time. Plaintiff continued to represent the Debtor even after the jury issued its verdict in the District Court litigation. Plaintiff's efforts exceeded what is required by the Rules of Professional Conduct.

challenge.  Mr. Rasch, despite his capacities, abilities, and resources, conducted no due diligence.  Plaintiff's reliance on the Debtor's statements was not justified.  Plaintiff suffered no damages as the result of any deceit or fraudulent acts committed by the Debtor.  Plaintiff failed to establish the third and fourth nondischargeability elements.

### Conclusion

Plaintiff has not established any indebtedness owed to it by the Debtor was incurred by the Debtor through misrepresentation or fraud.  The indebtedness owed by the Debtor to Plaintiff is dischargeable pursuant to 11 U.S.C. Section 523(a)(2)(A) and is due to be discharged pursuant to 11 U.S.C. Section 727.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that the relief sought in Plaintiff's Complaint (Doc. No. 1) is hereby **DENIED**; and it is further

**ORDERED, ADJUDGED and DECREED** that the indebtedness owed to Plaintiff by the Debtor is **DISCHARGEABLE** pursuant to 11 U.S.C. Section 523(a)(2)(A); and it is further

**ORDERED, ADJUDGED and DECREED** that the Clerk of Court is hereby directed to enter the general discharge of the Debtor pursuant to 11 U.S.C. Section 727.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.


Dated this 2nd day of May, 2012.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge